J-A27030-16

2017 PA Super 86

| | |
|---|---|
| STANLEY FELLERMAN AND CAROL FELLERMAN<br><br>Appellees<br><br>v.<br><br>PECO ENERGY CO., COMCAST OF SOUTHEAST PENNSYLVANIA, LLC, HISTORIC HOME INSPECTION, LP, D/B/A WIN HOME INSPECTION, ADDISON WOLFE REAL ESTATE AND LISA JAMES OTTO PROPERTIES<br><br>APPEAL OF:  HISTORIC HOME INSPECTION, LP, D/B/A WIN HOME INSPECTION | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br>No. 3409 EDA 2015 |

Appeal from the Order Dated October 21, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): July Term, 2014, No. 2640

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

OPINION BY LAZARUS, J.:                    **FILED MARCH 30, 2017**

Historic Home Inspection, LP, d/b/a WIN Home Inspection ("Historic"), appeals from the order entered in the Court of Common Pleas of Philadelphia County overruling its preliminary objections, which sought to enforce an agreement for alternative dispute resolution.  Upon review, we reverse and remand for proceedings consistent with the dictates of this opinion.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellees, Stanley and Carol Fellerman ("Fellermans"), retained Historic to perform a home inspection in connection with their purchase of 6858 Upper York Road in New Hope, Bucks County ("Property"). In conjunction therewith, Stanley Fellerman executed an "Inspection Agreement" ("Agreement"), outlining, *inter alia*, the scope of the inspection, exclusions, and limitations of liability. The Agreement also contained an arbitration clause, which provided as follows:

DISPUTE RESOLUTION AND REMEDY LIMITATION

. . .

Binding Arbitration – The undersigned parties below agree that any dispute between the parties, except those for nonpayment of fees, that in any way, directly or indirectly, arising out of, connected with, or relating to the interpretation of this Agreement, the inspection service provided, the report or any other matter involving our service, shall be submitted to binding arbitration conducted by and according to the Accelerated Arbitration Rules and Procedures of Constructive Dispute Resolution Services, LLC. You may recommend an alternative arbitration provider for our consideration. The arbitration decision shall be final and binding on all parties, and judgment upon the award rendered may be entered into any court having jurisdiction. In any dispute arising under this Agreement, Our Inspection or the Inspection Report, the costs of the arbitration shall be the sole responsibility of the client up to and including the arbitration hearing. As part of the arbitration award, the arbitrator shall award to the prevailing party any or all costs of the arbitration process as he or she deems to be appropriate. Expenses related to personal attorneys, experts, engineers, witnesses, engineering reports or other inspection reports or similar individuals or documents shall be the direct responsibility of the parties and shall not be considered as part of the arbitration award. The arbitration award shall be limited in scope to the issues and terms as specified in the Inspection Agreement. No legal action or proceeding of any kind, including those sounding in tort or contract, can be commenced against

us, or our officers, agents or employees more than one year after the date of the subject inspection. Time is expressly of the essence herein. THIS TIME PERIOD IS SHORTER THAN OTHERWISE PROVIDED BY LAW.

LIMITATION OF LIABILITY – IF WE, OUR EMPLOYEES, INSPECTORS, OR ANY OTHER PERSON YOU CLAIM TO BE OUR AGENT, ARE CARELESS OR NEGLIGENT IN PERFORMING THE INSPECTION AND/OR PREPARING THE REPORT AND/OR PROVIDING ANY SERVICES UNDER THIS AGREEMENT, OUR LIABILITY IS LIMITED TO THE FEE YOU PAID FOR THE INSPECTION SERVICE. AND YOU RELEASE US FROM ANY ADDITIONAL LIABILITY. WE HAVE NO RESPONSIBILITY FOR THE POSSIBILITY YOU LOST AN OPPORTUNITY TO RENEGOTIATE WITH THE SELLER. THERE WILL BE NO RECOVERY FOR SECONDARY OR CONSEQUENTIAL DAMAGES BY ANY PERSON.

Inspection Agreement, 1/21/13, at 1-2.

The Property contained four utility poles, which supported, *inter alia*, PECO power lines, Comcast cable lines and a PECO transformer. On December 2, 2013, the Fellermans discovered that the pole closest to their residence, supporting the PECO transformer, had fallen to the ground in their "heavily wooded and leaf-covered front yard" near their home. Brief of Appellees, at 6. The Fellermans assert that the pole fell due to "severe rot, decay and deterioration." ***Id.*** at 6. The Fellermans notified PECO of the incident; however, prior to PECO's arrival, Stanley Fellerman noticed that the fallen transformer, power and cable lines had started a fire. Stanley attempted to extinguish the fire and, in doing so, was shocked, burned and severely injured, allegedly by the PECO power line.

The Fellermans filed suit by writ of summons on July 23, 2014. In their second amended complaint, they named as defendants PECO, Comcast,

Historic, Addison Wolfe Real Estate and Lisa James Otto Country Properties. The Fellermans asserted that Historic failed to discover or disclose the deteriorated condition of the utility pole, in breach of the Agreement, and asserted causes of action for negligent misrepresentation, fraud, violations of the Uniform Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1-201-9.3 (UTPCPL), and breach of contract.

On September 22, 2015, Historic filed preliminary objections, asserting, *inter alia*, that the Fettermans' suit was barred by the terms of the arbitration clause contained in the Agreement. The trial court overruled Historic's preliminary objections by order dated October 20, 2015 and ordered it to file an answer to the Fettermans' complaint within twenty days. Historic filed a timely notice of appeal, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In its Rule 1925(a) opinion, the trial court found that its order was neither an appealable "final order" within the meaning of Pa.R.A.P. 341(b), nor was it an interlocutory order appealable as of right under Pa.R.A.P. 311. Accordingly, the court recommended quashal.

Historic raises the following issue for our review:

Is it error to overrule preliminary objections raising an agreement for alternative dispute resolution when the parties signed and executed an agreement to arbitrate all disputes arising out of breach of the [A]greement and that [A]greement is the gist of the action?

Brief of Appellant, at 5.

Prior to considering the merits of Historic's claim, we address the trial court's assertion that its order denying Historic's preliminary objection in the nature of a motion to compel arbitration is interlocutory and not immediately appealable. In short, the trial court is incorrect. Pennsylvania Rule of Appellate Procedure 311(a)(8) provides, in relevant part:

> (a) General rule.--An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:
>
> . . .
>
> (8) Other cases.--An order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties.

Pa.R.A.P. 311(a)(8). Applicable here, section 7320 of the Judiciary Code provides, in relevant part:

> (a) General rule.--An appeal may be taken from:
>
> (1) A court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration).

42 Pa.C.S.A. § 7320(a)(1). *See also MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1213 n.4 (Pa. Super. 2015), appeal denied, 700 EAL 2015 (Pa. Nov. 17, 2016) (order refusing to compel arbitration is threshold, jurisdictional question appealable as exception to general rule that order overruling preliminary objections is interlocutory and not appealable as of right). Historic's sole claim on appeal addresses the trial court's refusal to compel arbitration pursuant to the terms of the Agreement. Accordingly, Historic's appeal is properly before this Court.

We now turn to the substance of Historic's claim. We begin by noting:

Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration . . . "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 654 (Pa. Super. 2013), [] (quoting ***Walton v. Johnson***, 66 A.3d 782, 787 (Pa. Super. 2013)).

> "In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration." ***Elwyn*** [***v. DeLuca*** ], 48 A.3d [457], 461 [ (Pa. Super. 2012)][, ]quoting ***Smay v. E.R. Stuebner, Inc.***, 864 A.2d 1266, 1270 (Pa. Super. 2004)). First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement. ***Pisano***, 77 A.3d at 654–[]55.

"Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." ***Elwyn***, 48 A.3d at 461.

***MacPherson***, 128 A.3d at 1218–19.

This Court has explained the interpretation of arbitration agreements as follows: (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute. To resolve this tension, courts should apply the rules of contractual construction[], adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

*Callan v. Oxford Land Dev., Inc.*, 858 A.2d 1229, 1233 (Pa. Super. 2004) (citations and quotation marks omitted).

We first determine whether a valid agreement to arbitrate exists between Historic and the Fellermans. *Elwyn*, 48 A.3d at 461. The Fellermans argue that the arbitration agreement is invalid because it is unconscionable. Specifically, they claim that the agreement is illegible and not conspicuous and, as a result, they were not put on adequate notice of the rights they were waiving. They also assert that the agreement unreasonably favors the drafter, Historic.[1]

Historic argues that, although the agreement is "not easy to read," Stanley Fellerman signed it without asserting that it was illegible. Citing *Hinkal v. Pardoe*, 133 A.3d 738 (Pa. Super. 2016) (en banc), Historic

---

[1] In contesting the validity of the Agreement, the Fellermans also argue that, because there are multiple other defendants with regard to whom they have indisputably <u>not</u> waived their right to a jury trial, forcing them to arbitrate would deprive them of their constitutional right to a jury trial. In this regard, the Fellermans also invoke notions of judicial economy, arguing that "arbitrating only the claims against Historic [], and preserving the right to a jury against the other entities, would require separate proceedings, separate discovery, enormous expense for all involved, and delay the ultimate resolution of the matter." Brief of Appellants, at 13. This argument is meritless. Recently, our Supreme Court decided *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490 (Pa. 2016), in which it addressed nearly identical arguments aimed at invalidating an agreement to arbitrate in the context of a wrongful death and survival action. The Court rejected those arguments, concluding that the mandate of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, favoring arbitration, trumps notions of judicial economy and efficiency and requires that otherwise valid arbitration agreements be enforced, even where enforcement results in related disputes with multiple defendants being adjudicated in separate forums.

asserts that parties to a contract have a duty to read the document before signing it, and the failure to do so is not an excuse or defense. Historic also argues that, because both parties must arbitrate, the agreement does not favor the drafter. Moreover, Historic notes that the Fellermans "do not allege they could not negotiate the arbitration clause out of the agreement, or that they were unable to hire one of the many other home inspection companies in business in southeastern Pennsylvania." Brief of Appellants, at 13.

Based on our review, we conclude that the parties entered into a valid agreement to arbitrate. The Fellermans base their unconscionability argument primarily on their assertion that the agreement was inconspicuous and difficult to read. Our review of a copy of the document included in the reproduced record reveals that, while it is not the clearest document, it is legible and capable of being understood. "As a general principle, minimum conspicuity standards are not a requirement to establish the formation of a contract." **Hinkal**, 133 A.3d at 745. "[C]onspicuity *per se* is not an essential element of contract formation." **Id.**

Moreover, the agreement contains a conspicuous statement at the very top, written in bold, capital letters and surrounded by a text box, which reads as follows:

| **PRIOR TO THE INSPECTION, PLEASE READ CAREFULLY BEFORE SIGNING** |
|---|

If, as the Fellermans argue, the agreement was "smudged, blurry, [in] small print [and] incomplete," Mr. Fellerman could have requested that he be provided with a legible copy prior to signing. There is nothing in the record to suggest that he ever did so.

The Fellermans also argue that Historic actually intended, by virtue of the physical characteristics of the document, "to dissuade the signor from even reading the document, let alone understanding and questioning it." Brief of Appellees, at 16. This argument is unavailing. First, the Fellermans present no proof to support that assertion. Second, it is "well established that, in the absence of fraud, the failure to read a contract before signing it is 'an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract'; it is considered 'supine negligence.'" *In re Estate of Boardman*, 80 A.3d 820, 823 (Pa. Super. 2013), quoting *Germantown Sav. Bank v. Talacki*, 657 A.2d 1285, 1289 (Pa. Super. 1995). Accordingly, the consequences of any failure to actually read the document – or request a more legible copy – prior to signing must be borne by the Fellermans.

The Fellermans also assert that the agreement is void because it unreasonably favors Historic by seeking to limit damages to $780.00, the amount paid by the Fellermans for the inspection fee. In so arguing, the Fellermans rely upon this Court's decision in *Carll v. Terminix International Co., L.P.*, 793 A.2d 921 (Pa. Super. 2002), in which we held

to be unconscionable an arbitration agreement containing a limitation of damages on the basis of public policy concerns.

In **Carll**, homeowners sued Terminix, a pest control company, alleging they sustained severe and permanent injuries as a result of negligent application of pesticides in and around their home. The contract signed by the homeowners contained an arbitration agreement as well as a limitation of liability provision, providing that, notwithstanding any claim of negligence on the part of Terminix, the company's sole responsibility was to "re-treat" the homeowners' property. The Court found that the limitation of liability provision was incapable of being severed from the arbitration clause. Emphasizing that Terminix was "in the business of applying insecticides in a residential setting," the Court concluded that the clause limiting liability for injury to the person was unconscionable and unenforceable as against public policy. **Id.** at 925. While not explicitly relying on it, the Court noted the UCC's limitation of consequential damages provision, recognizing that a provision limiting consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable, finding that it lent support to its conclusion. **See** 13 Pa.C.S.A. § 2719(c). We find **Carll** to be distinguishable.

> The phrase "public policy" has been used in a general sense to mean that in certain egregious circumstances a contract will be declared void if it is "so obviously for or against the public health, safety, morals or welfare that there is virtual unanimity in regard to it, that a court may constitute itself the voice of the community."

*Carll*, 793 A.2d at 924, quoting *Jeffrey v. Erie Ins. Exch.*, 621 A.2d 635, 640 (Pa. Super. 1993).

In *Carll*, the Court emphasized the hazardous nature of Terminix's business, i.e., the application of insecticidal chemicals in a residential setting, and concluded that public policy considerations would not permit the limitation of damages where severe and permanent injuries resulted. Here, however, the service Historic performed for the Fellermans was not, by its very nature, dangerous. While providing a general overview of the safety and stability of a potential residence is arguably one aspect of a home inspection, the task of a home inspector is not to guarantee the safety of the premises. Rather, it is to provide the homebuyer with a non-invasive examination of the structure and the systems contained therein in order to enable the buyer to make a more informed purchasing decision.[2] Accordingly, *Carll* does not compel a finding that the contract at issue here is void as against public policy.

---

[2] According to the website of the American Society of Home Inspectors, a home inspection is "an objective visual examination of the physical structure and systems of a house, from the roof to the foundation." http://www.homeinspector.org/FAQs-on-Inspection#1. A standard home inspector's report covers: (1) the heating system; (2) the central air conditioning system; (3) interior plumbing and electrical systems; (4) the roof, attic and visible insulation; (5) walls, ceilings, floors, windows and doors; and (6) the foundation, basement and structural components. *Id.* A home inspection may identify the need for major repairs or builder oversights, as well as the need for maintenance. *Id.*

Indeed, we need not reach the issue of whether the limitation of liability clause is valid, as, unlike in *Carll*, we find the provision to be severable from the arbitration agreement itself. Again, this case is distinguishable from *Carll*. In *Carll*, the arbitration provision was inextricably intertwined with the liability limitation. As the Court noted,

> The arbitration provision not only provides for arbitration but at the same time limits the arbitrator's authority. The limitation of liability language is not independent of the agreement to arbitrate. These provisions are not distinct. The same contractual provision that directs arbitration limits the authority of the individual conducting that arbitration.

*Carll*, 793 A.2d at 926.

Conversely, here, the arbitration provision is separate and distinct from the damage limitation portion of the agreement, both location-wise and functionally. As such, the damage limitation may be stricken from the agreement without affecting the parties' agreement to arbitrate. Moreover, unlike the agreement in *Carll*, the agreement between the Fellermans and Historic contains an explicit severability clause. Thus, the remainder of the contract remains enforceable even if the limitation clause is ultimately deemed void. However, because we need not reach the validity of the limitation of liability clause, we leave that determination to the arbitrator. *See Shannon v. Pennsylvania Edison Co.*, 72 A.2d 564, 567 (Pa. 1950) (unless restricted by agreement, arbitrators possess authority to determine questions of both law and fact).

For the foregoing reasons, we conclude that Historic and the Fellermans entered into a valid agreement to arbitrate. We must now determine whether the instant dispute falls within the scope of the agreement.

In its brief, Historic claims that the trial court erred in denying its request to arbitrate because the Fellermans' claims all arise from the Agreement, which contains a broadly worded arbitration clause. Given the breadth of the arbitration clause, Historic argues that it encompasses the tort claims asserted by the Fellermans.

In response, the Fellermans argue that the bodily injury claims they assert in their complaint are not within the scope of the agreement. They assert that, "as evidenced by the damages limitation provision, the Agreement merely contemplated the Fellermans having to secure a new home inspection for the claimed failures of [Historic]." Brief of Appellees, at 19.

This Court has explained the interpretation of arbitration agreements as follows:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

*Callan*, 858 A.2d at 1233, quoting *Highmark Inc. v. Hospital Service Ass'n. of Northeastern Pennsylvania*, 785 A.2d 93, 98 (Pa. Super. 2001). "To resolve this tension, courts should apply the rules of contractual construction[], adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties." *Callan*, 858 A.2d at 1233. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. *Id.*

> Where a contract dispute arises between parties to a contract containing an unlimited arbitration clause, the parties must resolve their dispute through arbitration. Unless the parties impose some limitation on the arbitrator's authority, the arbitrator may decide all matters necessary to dispose of any disputed claims subject to arbitration and, the court may not impose any restrictions sua sponte. Accordingly, "all" contract disputes does mean "all" contract disputes unless otherwise agreed by the parties.
>
> An agreement to arbitrate disputes arising from a contract encompasses tort claims where the facts which support a tort action also support a breach of contract action. A claim's substance, not its styling, controls whether the complaining party must proceed to arbitration or may file in the court of common pleas.

*Callan*, 858 A.2d at 1233 (citations omitted).

> Here, the arbitration clause at issue provides that the parties
>
> agree that any dispute between [them], except those for nonpayment of fees, that in any way, directly or indirectly, arising out of, connected with, or relating to the interpretation of this Agreement, the inspection service provided, the report or

any other matter involving our service, shall be submitted to binding arbitration[.]

Inspection Agreement, 1/21/13, at 1-2.

The Fellermans' claims against Historic are all grounded in Historic's alleged failure to properly provide services, in breach of its contract with the Fellermans. *See* Second Amended Complaint, 5/22/15, at ¶¶ 95-96. ("Pursuant to [the] contract, [Historic] agreed to provide certain services and performed certain duties in connection with the inspection of the real property[.] . . . [Historic] failed to properly provide those services and duties and, as such, breached the subject contract."). The Fellermans claim that they sustained injuries as a result of Historic's alleged failure to disclose certain information regarding the power pole, in breach of its obligation under the contract. They also assert that Historic made negligent and intentional misrepresentations with regard to the power pole, also in violation of their contractual obligations. In short, the Fellermans' tort claims all arise from duties they claim were owed them by Historic pursuant to the inspection agreement. Accordingly, "the facts which support a tort action also support a breach of contract action," *Callan*, *supra*, and the tort claims are therefore subject to the arbitration clause contained within the agreement.

Order reversed. Case remanded for proceedings consistent with the dictates of this opinion. Jurisdiction relinquished.

Judge Panella joins the Opinion.

Justice Fitzgerald concurs in the result.

- 15 -

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/30/2017