J-A23034-17, J-A23035-17, J-A23036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FAITH TECHNOLOGIES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HORIZON CONSTRUCTION GROUP, | : | |
| INC. AND LIBERTY MUTUAL GROUP, | : | |
| INC. A/K/A LIBERTY MUTUAL | : | No. 777 EDA 2017 |
| INSURANCE COMPANY | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered February 2, 2017
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 5097-CV-2016

| | | |
|---|---|---|
| GEORGE J. HAYDEN, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FAITH TECHNOLOGIES, INC. AND | : | |
| CASUALTY COMPANY | : | |
| | : | No. 784 EDA 2017 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HORIZON CONSTRUCTION GROUP, | : | |
| INC. AND LIBERTY MUTUAL | : | |
| GROUP, INC. A/K/A LIBERTY | : | |
| MUTUAL INSURANCE COMPANY | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered February 21, 2017
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 4689CV-2016

| | | | |
|---|---|---|---|
| FAITH TECHNOLOGIES, INC. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| CBK LODGE, LP, AND EPT SKI | : | | |
| PROPERTIES, INC. | : | | |
| | : | No. 785 EDA 2017 | |
| Appellants | : | | |

Appeal from the Order Entered February 2, 2017
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 7162-CV-2016

BEFORE:   PANELLA, DUBOW, and FITZGERALD,[*] JJ

MEMORANDUM BY FITZGERALD, J.:                    **FILED OCTOBER 19, 2017**

These three related appeals[1] arise from a dispute between several parties to a construction project.  In 777 EDA 2017 and 784 EDA 2017, Horizon Construction Group, Inc. ("Horizon") and Liberty Mutual Group, Inc. ("Liberty Mutual"), appeal from orders overruling their preliminary objections seeking enforcement of an agreement for alternative dispute resolution.  In 785 EDA 2017, CBK Lodge, LP ("CBK") and EPT, Ski Properties, Inc. ("EPT"), appeal from an order overruling their preliminary objections to stay a

---

[*] Former Justice specially assigned to the Superior Court.

[1] For purposes of disposition, we consolidate these appeals.  **See** Pa.R.A.P. 513 ("where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal").

mechanic's lien action pending the outcome of alternative dispute resolution proceedings between Horizon and Appellee, Faith Technologies, Inc. ("Faith"). For the reasons provided below, we (1) affirm in part, reverse in part, and quash in part in 777 EDA 2017, (2) affirm in 784 EDA 2017, and (3) quash in 785 EDA 2017.

## FACTUAL AND PROCEDURAL HISTORY

### 1. Horizon Becomes General Contractor On The Construction Project

In October 2013, Horizon entered into a contract with CBK and EPT as general contractor for the construction of a resort hotel and a waterpark known as the "Camelback Mountain Resort" (the "Project"). R.R. at 21a-98a[2] (Horizon's contract with CBK and EPT).

### 2. Horizon Obtains Payment Bonds From Liberty Mutual

Horizon entered into two payment bonds with Liberty Mutual which provide that every defined claimant may sue on the payment bonds, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The payment bonds state:

> No suit or action shall be commenced hereunder by any claimant . . .
>
> Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any party thereof, is situated, or in

---

[2] For the parties' convenience, we refer to the reproduced record.

the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

R.R. at 237a, 246a. The payment bonds do not provide for arbitration of bond claims. *Id.* The payment bonds incorporated by reference Horizon's contract with CBK and EPT but did not incorporate the subcontract with Faith discussed below. *Id.* at 236a, 245a.

### 3. Horizon Subcontracts Electrical Work To Faith

During 2014, Horizon and Faith entered into two subcontract agreements for Faith to perform labor and furnish materials for electrical installation on the hotel and waterpark portions of the Project ("Faith Subcontracts"). The Faith Subcontracts provide, at Horizon's option, for arbitration of any disputes arising out of or relating to the Faith Subcontracts or Faith's work on the Project, as follows:

> Any dispute or claim between [Faith] and [Horizon] arising out of or relating to this Subcontract or the work shall be decided, at the option of [Horizon], by arbitration in accordance with the latest version of the American Arbitration Association rules for Construction Industry proceedings. Written notice of the demand for arbitration shall be delivered to the American Arbitration Association and the other party in accordance with time limits in the Subcontract and within the time for institution of legal proceedings according to applicable statutes of limitations.

R.R. at 106a.

### 4. Faith Obtains Payment Bonds From Continental

Faith entered into two payment bonds with its surety, Continental, which provide that every defined claimant may sue on the payment bonds,

prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Continental payment bonds did not provide for arbitration of bond claims. R.R. at 412a-414a.

### 5. Faith Sub-subcontracts Electrical Work To Hayden

On February 15, 2014, Faith entered into sub-subcontract agreements with George J. Hayden, Inc. ("Hayden"), a local electrical contractor, for Hayden to perform electrical installation work in connection with Faith's subcontract work on the hotel portion and waterpark portions of the Project (the "Hayden Sub-subcontracts"). The Hayden Sub-subcontracts provide, at Faith's option, for arbitration of any disputes arising out of the Hayden Sub-subcontracts, as follows:

> [Faith], in its sole discretion, may demand arbitration with [Hayden] to resolve any dispute or claim arising under this Agreement. Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association, as applicable to the construction industry.

R.R. at 423a.

### 6. Disputes Arise During The Project

Disputes arose between Faith and Horizon during the Project. Horizon claimed that Faith fraudulently modified its labor mark-up to inflate amounts owed for additional work performed by Faith on the Project. R.R. at 7a-11a (Faith's complaint against Horizon). Faith claimed that Horizon failed to pay Faith for the original scope of the work as well as for additional work it was required to perform. *Id.*

Disputes also arose between Faith and Hayden. Hayden alleged that Faith failed to pay monies that it owed for Hayden's work and that Faith constantly interrupted Hayden's work schedule. *Id.* at 359a-386a (Hayden's complaint against Faith). Faith contended that Horizon was to blame for the delays as the general contractor for the Project. *Id.* atb7a-11a (Faith's complaint against Horizon).

### 7. Action I (Faith v. Horizon and Liberty Mutual)

In July 2016, Faith filed a writ of summons against Horizon and Continental at 5097 Civil 2016. Faith subsequently filed a complaint against Horizon and Liberty Mutual. Five counts of the complaint allege claims against Horizon for breach of contract, conversion and violation of the Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. §§ 501-516. R.R. at 5a-16a. One count alleges a claim against Liberty Mutual for breach of its payment bond. *Id.* at 14a-15a. In accordance with the arbitration provisions in the Faith Subcontracts, Horizon elected to arbitrate Faith's claims. *Id.* at 267a-268a (Horizon's preliminary objections in Action I). In addition, Liberty Mutual purported to consent to arbitration, despite the lack of an arbitration clause in its payment bonds. Trial Ct. Op. (Action I), 2/2/17, at 4.

### 8. Action II (Hayden v. Faith and Continental v. Horizon and Liberty Mutual)

In July 2016, Hayden filed a writ of summons against Faith at No. 4689 Civil 2016. Subsequently, Hayden filed a complaint against Faith

alleging breach of contract, quantum meruit and a CASPA violation. R.R. at 359a-389a. Hayden also asserted a payment bond claim against Faith's surety, Continental. *Id.* at 390a-391a.

In accordance with the arbitration provisions in the "Hayden Sub-subcontracts, Faith elected not to arbitrate Hayden's claims. Trial Ct. Op. (Action I), at 4.

In response to Hayden's complaint, Faith filed a joinder complaint against Horizon and Liberty Mutual raising claims virtually identical to Faith's claims in Action I.[3] R.R. at 433a-447a.

### 9. Action III (Faith v. CBK and EPT)

In December 2015, Faith filed a mechanic's lien against CBK and EPT. R.R. at 931a-934a. In October 2016, Faith filed a complaint against CBK and EPT at 7162 Civil 2016 seeking recovery of all sums due and owing for work performed under Faith's subcontracts with Horizon. *Id.* at 955a-963a. Since Faith did not have a contract directly with CBK or EPT, no agreement exists between these parties to arbitrate their dispute.

---

[3] The lone difference was that Count I of Faith's complaint in Action I alleged breach of contract against Horizon alone, whereas Count I of Faith's joinder complaint in Action II alleged contribution and indemnity against both Horizon and Liberty Mutual. *See* R.R. at 11a, 439a.

### 10. Preliminary Objections in Actions I, II and III Relating To Arbitration

In Action I, Horizon filed preliminary objections invoking the arbitration clause in its subcontract with Faith. R.R. at 261a-356a. Horizon requested that the trial court stay or dismiss Faith's action pending arbitration before the American Arbitration Association. *Id.*

In Action II, Horizon and Liberty Mutual filed preliminary objections to Faith's joinder complaint, again invoking the arbitration clause in its subcontract with Faith and requesting that the trial court stay or dismiss Faith's joinder complaint pending arbitration before the American Arbitration Association.[4] *Id.* at 760a-930a.

In Action III, CBK and EPT filed preliminary objections[5] requesting that the trial court stay litigation of Faith's mechanic's lien action pending Faith's arbitration with Horizon before the American Arbitration Association. R.R. at 964a-1076a.

Faith filed responses to the preliminary objections in all three actions, while Hayden filed a response to the preliminary objections in Action II.

---

[4] Alternatively, Horizon and Liberty Mutual argued that (1) Count I of the joinder complaint failed to state a cause of action, and (2) Counts II through VI were barred under the prior pending action doctrine, because Faith was asserted the same actions and sought the same relief in Action I. None of these issues have been raised in the present appeals.

[5] Counsel for Horizon and Liberty Mutual filed these preliminary objections on behalf of CBK and EPT.

Both Faith and Hayden argued that arbitration was not a proper vehicle for this dispute, because (1) Liberty Mutual and Continental had no arbitration agreement with any parties; (2) CBK and EPT had no arbitration agreement with Faith; (3) Hayden had no arbitration agreement with Horizon; (4) although Faith had the right to arbitrate its dispute with Hayden, Faith elected not to do so; and (5) Horizon was the only party that wanted to arbitrate the dispute.

On February 2, 2017, the trial court overruled Horizon's and Liberty Mutual's preliminary objections in Actions I and II and CBK's and EPT's preliminary objections in Action III. The effect of these orders was to keep all claims by all parties in the trial court, notwithstanding Horizon's invocation of its arbitration clause with Faith. The trial court reasoned:

> The enforcement of the arbitration provision in the Horizon -Faith subcontract would subject those two parties to the decision of the arbitrator. However, that would leave the dispute involving [Liberty Mutual and Continental], Hayden, CBK and EPT to be determined in this court. Rather than simplifying the litigation, it would complicate it, and possibly subject the parties to inconsistent decisions . . . . Hayden asserts that it is entitled to additional payment due to delays in the project caused by Horizon. Faith is seeking damages from Horizon due to delays and schedule updates it claims were caused by Horizon. To require the parties to address these claims in two separate forums would be costly and may possibly lead to inconsistent results. Joinder of all the claims pursuant to Pa.R.C.P. 213 is the more efficient means of deciding the dispute.

Trial Ct. Op. (Action I), at 6-7.

Horizon filed timely appeals in Actions I and II, and both Horizon and the trial court complied with Pa.R.A.P. 1925. CBK and EPT filed a notice of appeal in Action III.

In all three appeals, the same issues are presented for review:

> 1. Did the lower court err in overruling Horizon and Liberty Mutual's [p]reliminary [o]bjections seeking to compel arbitration of the disputes set forth in Faith's [c]omplaint in [Action I] based upon the clear, bargained for arbitration agreement in the subcontracts at issue?
>
> 2. Did the lower court err in overruling Horizon and Liberty Mutual's [p]reliminary [o]bjections seeking to compel arbitration of the disputes set forth in Faith's [j]oinder [c]omplaint in [Action II] based upon the clear, bargained for arbitration agreement in the subcontracts at issue?
>
> 3. Did the lower court err in overruling Horizon's [p]reliminary [o]bjections, filed as the party-in-interest on behalf of CBK [] and EPT [], seeking to stay [Action III] pending completion of binding arbitration between Faith and Horizon?

Appellants' Brief, 777 EDA 2017, at 10; Appellants' Brief, 784 EDA 2017, at 10; Appellants' Brief, 785 EDA 2017, at 10.

## **JURISDICTION**

Preliminarily, we address whether we have jurisdiction over these appeals. Pennsylvania Rule of Appellate Procedure 311(a)(8) provides, in relevant part:

> (a) General rule.—An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:
>
> ***

- 10 -

> (8) Other cases.—An order that is **made final or appealable by statute** or general rule, even though the order does not dispose of all claims and of all parties.

Pa.R.A.P. 311(a)(8) (emphasis added).

The trial court's orders in Actions I and II are appealable under section 7320 of the Uniform Arbitration Act, which provides in relevant part:

> An appeal may be taken from . . . [a] court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration).

42 Pa.C.S. § 7320(a)(1). "An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to [section] 7320(a) and [Rule] 311(a)(8)." **Cardinal v. Kindred Healthcare, Inc.,** 155 A.3d 46, 49 n.1 (Pa. Super. 2017).

The order in Action III, however, is not appealable. It is not from an order "denying an application to compel arbitration," 42 Pa.C.S. § 7320(a)(1), but is instead from an order **denying a stay** in Action III pending appeals in Actions I and II from orders denying arbitration. Nothing in section 7320(a)(1) permits an appeal of an order denying a stay pending an appeal in a separate case denying a motion to compel arbitration.

Neither is the order in Action III appealable under the collateral order doctrine embodied in Pa.R.A.P. 313, which provides:

> **(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. Here, the order denying a stay does not involve a right too important to be denied review, because the question of arbitrability only affects the parties to this construction dispute. *See Geniviva v. Frisk*, 725 A.2d 1209, 1214 (Pa. 1999) ("[f]or purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the issue be important to the particular parties"); *Pennsy Supply, Inc. v. Mumma*, 921 A.2d 1184, 1194 (Pa. Super. 2007) ("[d]etermining whether the Quarry Lease requires the parties to arbitrate this matter does not involve a right too important to be denied review . . . because the parties' rights and obligations under this contract only impact the parties to this litigation" (citation and quotation marks omitted)).[6]

Accordingly, we quash the appeal from Action III at 785 EDA 2017.

**APPEAL AT 777 EDA 2017**

---

[6] Because the order in Action III fails to satisfy the importance prong, we need not consider whether it satisfies the other elements of Rule 313(b). *See Jacksonian v. Temple Univ. Health Sys. Found.*, 862 A.2d 1275, 1282 (Pa. Super. 2004) ("[b]ecause an order must satisfy all three prongs of the rule to qualify as a collateral order, we do not need to address the third prong of the collateral order rule" (citation omitted)).

The first issue in this appeal is whether the trial court properly overruled the preliminary objections of Horizon and Liberty Mutual to compel Faith to arbitrate its claims in Action I. We affirm to the extent that the trial court declined to compel Faith to arbitrate its claim against Liberty Mutual. We reverse to the extent that the trial court declined to compel Faith to arbitrate its claims against Horizon. We quash to the extent that this appeal overlaps with the appeal in Action III, which we have quashed for the reasons given in the previous section.

> Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration . . . "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition."
>
> **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651, 654 (Pa. Super. 2013), [ ] (quoting **Walton v. Johnson**, 66 A.3d 782, 787 (Pa. Super. 2013)).
>
> > "In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration." **Elwyn [v. DeLuca]**, 48 A.3d [457], 461 [(Pa. Super. 2012)][,] quoting **Smay v. E.R. Stuebner, Inc.**, 864 A.2d 1266, 1270 (Pa. Super. 2004)). First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement. **Pisano**, 77 A.3d at 654–[ ]55.
>
> "Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." **Elwyn**, 48 A.3d at 461.

*Fellerman v. PECO Energy Co.*, 159 A.3d 22, 26 (Pa. Super. 2017) (some citations omitted).

> The Uniform Arbitration Act provides:
>
>> A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract.

42 Pa.C.S. § 7303. "If a valid arbitration agreement exists between the parties and appellants' claim is within the scope of the agreement, the controversy must be submitted to arbitration." *Messa v. State Farm Ins. Co.*, 641 A.2d 1167, 1170 (Pa. Super. 1994).

Faith's subcontracts with Horizon contain valid agreements to arbitrate disputes between these parties. Both subcontracts state that "[a]ny dispute or claim between [Faith] and [Horizon] arising out of or relating to this Subcontract or the work shall be decided, at the option of [Horizon], by arbitration . . . ." R.R. at 106a, 152a.

Moreover, Faith's claims against Horizon arise out of or relate to its subcontracts with Horizon. *Id.* at 4a-15a (Faith's complaint in Action I). Each of Faith's claims against Horizon allege that Horizon breached the subcontracts by failing to pay Faith for alleged work performed or otherwise relate to Faith's work on the Project. *Id.* at 8a-14a. Counts I, II and III of Faith's complaint plead alleged breaches of the subcontracts, including the following:

- 14 -

COUNT I

30.  Horizon has failed to properly and timely pay Faith the amount owing under its Subcontracts for such labor and materials, consequently, this failure to pay constitutes a material breach of the Subcontract.

COUNT II

37.  Horizon materially breached the Subcontracts, including the express and implied duties, agreements and obligations contained therein and arising therefrom, by failing to honor and fulfill its obligations with respect to the additional costs and expenses Faith incurred to perform the extra work on the Project.

COUNT III

43. Faith, in turn, properly and timely notified Horizon of Hayden's claim in accordance with the Subcontracts as, according to Hayden, Horizon was the source of the project delays, impacts and/or issues.

*Id.* at 9a-10a.

Similarly, in Count V, Faith asserts a CASPA claim against Horizon on the ground that Horizon allegedly "continued to wrongfully withhold payment from Faith the amounts due and owing under its Subcontract." *Id.* at 13a. In Count VI, Faith asserts a conversion claim against Horizon, alleging that "[d]espite having received payment from the owner, Horizon converted to its own use all Project funds and has failed to pay Faith sums due under the Subcontract." *Id.* at 13a, ¶ 64.

Because Counts I, II, III, V and VI of the complaint fall within the scope of the arbitration agreement between Faith and Horizon, the trial court

erred by overruling Horizon's preliminary objection to compel arbitration of these claims.

The final count in Faith's complaint, Count IV, is a claim against Horizon's surety, Liberty Mutual, alleging breach of its payment bond. This count is not subject to arbitration.

"[W]hen interpreting a bond, the language of the bond is determinative." *Berks Products Corp. v. Arch Ins. Co.*, 72 A.3d 315, 319 (Pa. Cmwlth. 2013) (citing *Salvino Steel & Iron Works, Inc. v. Fletcher & Sons, Inc.*, 580 A.2d 853 (Pa. Super. 1990)). Liberty Mutual's bonds neither include an arbitration provision nor incorporate by reference the arbitration provision in Faith's subcontracts with Horizon. Thus, Liberty Mutual cannot compel Faith to arbitrate any claim Faith lodges against Liberty Mutual. The fact that Liberty Mutual purports to consent to arbitration is of no moment, because absent any arbitration agreement with Faith, Liberty Mutual's consent is not enforceable against Faith. *Cf. Cumberland-Perry Area Vocational-Technical Sch. Auth. v. Bogar & Bink*, 396 A.2d 433, 435 (Pa. Super. 1978) ("[p]ersons cannot compel arbitration of a disagreement between or among parties who have not contracted to arbitrate that disagreement between or among themselves") (citations omitted)).

The parties argue at length over the proper remedy when Faith's claims against Horizon are subject to arbitration but Faith's claim against

Liberty Mutual is not. Faith argued, and the trial court agreed, that all claims against Horizon and Liberty Mutual must be litigated in the trial court. Horizon countered that all claims against Horizon and Liberty Mutual must proceed to arbitration. In light of recent decisions by our Supreme Court and this Court, we reach middle ground: Faith's claims against Horizon belong in arbitration, while Faith's claim against Liberty Mutual belongs in the trial court. *See Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 511-13 (Pa. 2016); *Fellerman*, 159 A.3d at 27 n.1.

In *Taylor*, a nursing home executed an agreement with a resident which required arbitration of claims arising from the resident's stay at the nursing home. Following the resident's death, her personal representative brought wrongful death and survival actions against the nursing home. The nursing home moved to bifurcate the wrongful death and survival actions and to compel arbitration of the survival action pursuant to the arbitration agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. The resident's personal representative argued that Pa.R.C.P. 213(e) required consolidation of the survival and wrongful death actions for trial.

Invoking the Supremacy Clause,[7] our Supreme Court held that the FAA preempted Rule 213(e) and required enforcement of the arbitration

_____

[7] The Supremacy Clause of the United States Constitution provides:

*(Footnote Continued Next Page)*

provision. *Taylor*, 147 A.3d at 510. The Court thoroughly analyzed a line of United States Supreme Court decisions holding that the FAA preempts state laws that are hostile to arbitration. *Id.* at 502-09. The "preemption juggernaut" created by these decisions

> instruct[s] that the prospect of inefficient, piecemeal litigation proceeding in separate forums is no impediment to the arbitration of arbitrable claims. Indeed, where a plaintiff has multiple disputes with separate defendants arising from the same incident, and only one of those claims is subject to an arbitration agreement, the [United States Supreme] Court requires, as a matter of law, adjudication in separate forums.

*Id.* at 502, 507; *see also id.* at 509 ("the FAA binds state courts to compel arbitration of claims subject to an arbitration agreement . . . This directive is mandatory, requiring parties to proceed to arbitration on issues subject to a valid arbitration agreement, even if a state law would otherwise exclude it from arbitration").

In *Fellerman*, which this Court decided shortly after *Taylor*, two home purchasers filed a civil action against a home inspector and other defendants for injuries that one of the purchasers suffered in a fire at the

---
*(Footnote Continued)*

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

residence. The purchasers' agreement with the home inspector contained an arbitration clause; the purchasers had no arbitration agreement with the other defendants. We held that the purchasers must submit their claims against the home inspector to binding arbitration. **Fellerman**, 159 A.3d at 30-31. Notably, we reasoned:

> The [home purchasers] also argue that, because there are multiple other defendants with regard to whom they have indisputably not waived their right to a jury trial, forcing them to arbitrate would deprive them of their constitutional right to a jury trial. In this regard, the [home purchasers] also invoke notions of judicial economy, arguing that "arbitrating only the claims against Historic [ ], and preserving the right to a jury against the other entities, would require separate proceedings, separate discovery, enormous expense for all involved, and delay the ultimate resolution of the matter." . . . This argument is meritless. Recently, our Supreme Court decided **Taylor** . . . in which it addressed nearly identical arguments aimed at invalidating an agreement to arbitrate in the context of a wrongful death and survival action. The Court rejected those arguments, concluding that the mandate of the [FAA] favoring arbitration, trumps notions of judicial economy and efficiency and requires that otherwise valid arbitration agreements be enforced, even where enforcement results in related disputes with multiple defendants being adjudicated in separate forums.

**Id.** at 27 n.1.

**Taylor** and **Fellerman** require bifurcation of the claims in Faith's complaint despite any "notions of judicial economy and efficiency." **Fellerman**, 159 A.3d at 27 n.1. Faith's claims against Horizon must proceed to arbitration in accordance with the arbitration clause in Faith's subcontracts with Horizon. Conversely, Faith's claim against Liberty Mutual

must remain in the trial court due to lack of an arbitration clause in Liberty Mutual's payment bonds and lack of incorporation by reference of the arbitration provision in Faith's subcontracts with Horizon.

The second and third issues that Horizon raises in its brief at 777 EDA 2017 relate to whether Faith should arbitrate its claims in Actions II and III, respectively. We will address the second issue in our discussion of the appeal at 784 EDA 2017 below. We quash the third issue because it purports to challenge the order denying a stay in Action III, an issue we lack jurisdiction to decide for the reasons given on pages 11-12.

## APPEAL AT 784 EDA 2017

The first issue in this appeal is whether the trial court properly overruled the preliminary objections of Horizon and Liberty Mutual to compel Faith to arbitrate its claims in Action I. We have addressed this issue above in our discussion of the appeal at 777 EDA 2017.

The third issue in this appeal purports to challenge the order denying a stay in Action III. As we did at 777 EDA 2017, we quash this issue for the reasons given on pages 11-12.

This leaves the second issue for resolution: whether the lower court erred in overruling Horizon and Liberty Mutual's preliminary objections seeking to compel arbitration of the disputes set forth in Faith's joinder complaint in Action II.

In Action II, Hayden, a sub-subcontractor, filed a civil action against Faith and Faith's surety, Continental, alleging breach of contract and related claims. Faith in turn filed a joinder complaint against Horizon and Liberty Mutual alleging virtually the same claims as in Action I.

The arbitration clause in Faith's agreement with Hayden gave Faith sole discretion to demand arbitration. Faith opted not to demand arbitration against Hayden.[8] Horizon and Liberty Mutual filed preliminary objections to Faith's joinder complaint, arguing, as they did in Action I, that Faith's claims against them should proceed to arbitration. The trial court overruled Horizon's and Liberty Mutual's preliminary objections.

In this Court, Horizon and Liberty Mutual argue that the trial court erred by denying their preliminary objections requesting arbitration of Faith's claims against them. For the reasons given in our discussion of the appeal at 777 EDA 2017, we hold that Faith's claims against Horizon in Counts I, II, III, V and VI must proceed to arbitration, while Faith's claim against Liberty Mutual in Counts I and IV must remain in the trial court. *See* pages 12-20, *supra*.

## CONCLUSION

In the appeal at 777 EDA 2017, we affirm the trial court's order to the extent that it overrules Liberty Mutual's preliminary objection seeking

---

[8] Horizon did not appeal Faith's decision to refrain from demanding arbitration against Hayden.

arbitration of Count IV of Faith's complaint in Action I. We reverse the trial court to the extent it overrules Horizon's preliminary objections seeking arbitration of Counts I, II, III, V and VI of Faith's complaint in Action I. We quash the third issue of Horizon's and Liberty Mutual's brief.

In the appeal at 784 EDA 2017, we affirm the trial court's order to the extent that it overrules Liberty Mutual's preliminary objection seeking arbitration of Counts I and IV of Faith's joinder complaint in Action II. We reverse the trial court to the extent it overrules Horizon's preliminary objections seeking arbitration of Counts I, II, III, V and VI of Faith's joinder complaint in Action II. We quash the third issue of Horizon's and Liberty Mutual's brief.

We quash the appeal at 785 EDA 2017.

Appeals at 777 EDA 2017 and 784 EDA 2017 affirmed in part, reversed in part and quashed in part. Cases remanded for proceedings in accordance with this memorandum. Jurisdiction relinquished. Appeal at 785 EDA 2017 quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/19/2017