J-S32002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M. O'HERRON COMPANY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLUMBIA GAS OF PENNSYLVANIA, | : | |
| INC. | : | |
| | : | No. 595 WDA 2021 |
| Appellant | : | |

Appeal from the Order Entered April 16, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-1079

BEFORE: LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:  **FILED: DECEMBER 23, 2021**

Columbia Gas of Pennsylvania, Inc. (Columbia) appeals from the order, entered in the Court of Common Pleas of Allegheny County, overruling its preliminary objections to the complaint filed by M. O'Herron Company (O'Herron). Specifically, Columbia argues that the trial court erred in finding that the parties did not have a binding agreement to arbitrate. Because the parties' fully integrated contract does not contain an arbitration provision, we affirm.

By way of background, O'Herron is a Pennsylvania company that provides contactor construction services associated with the construction of natural gas pipelines. Columbia is a utility company headquartered in Pennsylvania that provides natural gas services to Pennsylvania customers. NiSource Corporate Services Company (NiSource), Columbia's parent

company, is a Delaware corporation with its headquarters and principal place of business in Indiana.

On September 1, 2008, O'Herron entered into a General Services Agreement (2008 GSA) with NiSource to govern "the terms and conditions under which [NiSource] may purchase [w]ork from [O'Herron], which purchases shall be evidence by the delivery by [NiSource] to [O'Herron] of Purchase Orders." 2008 GSA, 9/1/08, at 1. The GSA contains an arbitration clause specifying that:

> In the event that any Controversy arising out of or relating to this Agreement is not resolved in accordance with the [step negotiation] procedures[,] such Controversy shall be submitted to mediation to mutually agreeable mediators from the American Arbitration Association. . . . [If] the mediation process has not resolved the Controversy within thirty days of the submission of the matter to mediation[,] or a longer time if agreed to by the parties, all Controversies will be decided by arbitration by the American Arbitration Association or by a mutually agreed upon arbitrator. The arbitration shall be administered at the arbitrator's offices closest to [NiSource]'s headquarters.

*Id.* at 10.

In April of 2010, O'Herron and Columbia executed a 54-page Service Authorization agreement whereby O'Herron agreed to perform pipeline construction work in Pittsburgh. The Service Authorization, signed by representatives of Columbia and O'Herron, provides that:

> Columbia [] hereby authorizes [O'Herron] to perform and [O'Herron] agrees to perform the below indicated services pursuant to the terms and conditions set forth and agreed to in the **NISOURCE CORPORATE SERVICES COMPANY GENERAL SERVICES AGREEMENT FOR CONSTRUCTION, MAINTENANCE, SERVICES AND**

> MATERIALS ("AGREEMENT") dated September 1, 2008
> (Contract No. R3NI-R4NNI-023).

Service Authorization, 4/19/10, at 1 (emphasis in original). The Service Authorization references the 2008 GSA throughout the attached exhibits.[1] Page two of the Service Authorization, however, contains an integration clause which specifies that: "**This** [**Service Authorization**] signed by [Columbia] and [O'Herron], **including any Exhibits attached hereto, constitute the only contract or agreement between the parties for this project,** [**and**] **represent the entire and complete agreement**." *Id.* at 2 (emphasis added); *see also id.* at 3 ("Exhibits are attached hereto and incorporated by reference herein."). Page four of the Service Authorization lists the exhibits that are attached to the contract "and/or incorporated by reference;" the 2008 GSA is neither listed nor attached as an exhibit.[2] *See id.* at 4. O'Herron

---

[1] *See* Service Authorization Exhibit B1, at 10 ("Each potential NiSource Contractor who will submit any bid to NiSource to perform [Department of Transportation] related 'Covered Functions' . . . must have an approved DOT Drug & Alcohol Program. . . . NiSource . . . designated National Compliance Management Service, Inc."); *id.* at 17 ("Contractor shall certify that all employees of its approved Subcontractors performing work on any NiSource facility are in compliance with these regulations prior to the performance of work."); *id.* at 19 ("Contractors shall . . . provide proof of insurance . . . [and] name NiSource Inc. [] as the Additional Insured. . . . All other terms and conditions of the NiSource General Services Agreement previously agreed to between the Contractor and Owner will remain in the same and shall govern all work performed by the Contractor.").

[2] The attached exhibits include: Exhibit A- Scope of Work; Exhibits B1-3, General Requirements, General Construction Requirements, and CDC Specific Construction Requirements; Exhibit C- Bid Unit Descriptions; Exhibit D- Price Matrix; Exhibit E- Corporate Environmental Standards; Exhibit F-Document

completed the project contemplated in accordance with the Service Authorization that same year.

Approximately 10 years later, in April 2020, Columbia first became aware of alleged serious defects in the project, which it claims were previously unrecognizable. On December 21, 2020, Columbia filed an arbitration action against Columbia in the state of Indiana, naming NiSource as an additional claimant on the Demand to Arbitrate.[3]

In February 2021, O'Herron filed, in Allegheny County, a Complaint for Declaratory Judgment and Equitable Relief, followed by a Motion for Stay of Arbitration, seeking a determination that Columbia and O'Herron do not have an agreement to arbitrate the underlying dispute. On March 15, 2021, Columbia filed its preliminary objections to the complaint, asserting objections under Pa.R.C.P. 1028(a)(5)-(6)—nonjoinder of an indispensable party

_____

Control, Reporting, & Audit Provisions; and Exhibit G- Quality Control & Assurance Standards. *See* Service Authorization, 4/19/10, at 4-54.

[3] "Columbia [] maintains that this cause of action was not recognizable or actionable until sometime after April of 2020." Trial Court Opinion, 6/30/21, at 2. Columbia further avers that it notified O'Herron of these defects and that O'Herron failed to respond. Brief of Appellant, at 10. O'Herron argues that Columbia failed to follow the procedural steps laid out in the 2008 GSA, including providing written notice of the alleged claims, making an "affirmative effort to schedule a meeting with [] O'Herron's executives regarding the claim," providing relevant information regarding the claim, and submitting the claim to mediation before filing its arbitration demand. Brief of Appellee, at 16. O'Herron maintains that even if this Court finds that the arbitration clause is integrated into the Service Authorization, Columbia failed to follow any of the required steps as laid out under that arbitration provision. *Id.* at 16. Because we find that it was not integrated, these issues, as well as whether the arbitration clause is valid and the proper venue for arbitration, are moot.

(NiSource) and prior agreement to arbitrate, respectively. Following oral argument, the court denied Columbia's preliminary objections on April 16, 2021, and granted O'Herron's motion to stay arbitration until further notice. On May 14, 2021, Columbia filed a motion for reconsideration, and on May 17, 2021, filed a notice of appeal to this Court. On June 9, 2020, Columbia filed its court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On June 23, 2021, O'Herron filed its brief in opposition to Columbia's motion for reconsideration. On June 30, 2021, the trial court issued an opinion in support of its April 16, 2021 order.

> Instantly, Columbia raises the following issue for our review:
>
> Whether the trial court erred as a matter of law in holding that the parties do not have an agreement to arbitrate arising under the Service Authorization when the master contract, the [2008 GSA], contains an explicit arbitration agreement, and the Service Authorization incorporates the [2008 GSA] by reference?

Brief of Appellant, at 4.

"In reviewing a trial court's [denial] of preliminary objections, [our] standard of review is *de novo* and the scope of review is plenary." ***Jones v. Bd. of Dirs. of Valor Credit Union***, 169 A.3d 632, 635 (Pa. Super. 2017). Similarly, whether an agreement to arbitrate exists and whether a writing constitutes an integrated contract are questions of law for which our standard is *de novo* and our scope plenary. ***See Neuhard v. Travelers Ins. Co.***, 831 A.2d 602, 604 (Pa. Super. 2003); ***Lenzi v. Hahnemann Univ.***, 664 A.2d 1375, 1379 (Pa. Super. 1995). "In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably

manifested by the language of their written agreement." ***Fellerman v. PECO Energy Co.***, 159 A.3d 22, 26–27 (Pa. Super. 2017). We look to what the parties have "clearly expressed, for the law does not assume that the language of the contract was chosen carelessly." ***Meeting House Lane, Ltd. v. Melso***, 628 A.2d 854, 857 (Pa. Super. 1993).

Here, the issue of whether Columbia and O'Herron have a binding agreement to arbitrate such that the trial court erred in overruling Columbia's preliminary objections turns on whether the 2008 GSA was part of the Service Authorization between the parties. Columbia argues that the 2008 GSA was incorporated into the Service Authorization by reference on the first and fourth pages thereof. Brief of Appellant, at 7-8; ***see also supra*** at n.1. Although Columbia cites to general case law regarding incorporation by reference, it does not cite any authority in which this Court or the Pennsylvania Supreme Court ignored explicit language in an integration clause to allow parol evidence[4] to alter the terms of a contract on a theory of incorporation by reference.

_____

[4] Parol evidence includes oral discussions and writings regarding negotiations that came before the parties entered into a final, binding, written contract. ***Gianni v. R. Russell & Co***, 126 A. 791, 792 (Pa. 1924) ("Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.") (internal citations omitted).

In arguing that the 2008 GSA and Service Authorization "should be interpreted as one agreement" and "must be construed together," Columbia claims that **Southwestern Energy Prod. Co. v. Forest Res., LLC**, 83 A.3d 177 (Pa. Super. 2013), is "directly on point." Brief of Appellant, at 18-19. We disagree.

In **Southwestern Energy**, this Court concluded that a 2002 Oil & Gas Lease, "2002 Letter Agreement," and "2005 Letter Agreement" were to be construed together where the documents "expressly reference and incorporate each other" and "identif[y themselves] as amendment[s] of the [original] agreement, not [] independent collateral agreement[s]." **Id.** at 188-90. In that case, on June 17, 2002, the parties executed the 2002 Letter Agreement which provides, in relevant part that: "This letter will reduce to writing our complete agreement regarding the [disputed mineral acres]. . . . Lessor shall execute the [2002 Lease] **attached hereto and made a part hereof by this reference**." **Id.** (emphasis added). The parties **attached** and executed the 2002 Lease, which stated that the "leased lands herein are subject to [the Letter Agreement] dated June 17, 2002." The 2005 Letter Agreement, which "amends and restates" the 2002 Letter Agreement, contained identical language and **attached** the 2002 Letter Agreement as an exhibit. **See id.**; **see also Matlock v. Matlock**, 664 A.2d 551, 514 (Pa. Super. 1995) (holding qualified domestic relations order (QDRO) and property settlement agreement (PSA) combine to form one agreement

where QDRO was attached to PSA as exhibit and PSA specifically refers to QRDO as exhibit).

The matter *sub judice* is readily distinguishable. In addition to the fact that, with respect to the 2008 GSA, the Service Authorization lacks the "incorporated by reference" language from the 2002 and 2005 Letter Agreements in **Southwestern**, here, the Service Authorization contains an integration clause specifying which additional documents are part of the agreement, and, importantly, **the 2008 GSA is not listed nor attached as an exhibit. *Cf. Southwestern Energy Prod. Co.*, *supra*.**

In **Yocca v. Pittsburgh Steelers Sports, Inc.**, 854 A.2d 425 (Pa. 2004), the Pennsylvania Supreme Court explained that:

> An integration clause which states that a writing is meant to represent the parties' entire agreement is [] a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.
>
> * * *
>
> Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

*Id.* at 437-38. **See also Dominic's Inc. v. Tony's Famous Tomato Pie Bar and Restaurant, Inc.**, 214 A.3d 259, 270 (Pa. Super. 2019) ("[P]arol evidence of prior representations is inadmissible as to a matter covered by the written agreement with an integration clause.").

This dispute involves two sophisticated entities, both of which were represented by counsel throughout their negotiations. As the trial court noted, these negotiations resulted in a detailed 54-page Service Authorization that lays out in exhaustive detail provisions governing "any factor the parties may experience from bore testing to Public Relations to Environmental Protections," *see* Trial Court Opinion, 6/30/21, at 7, and, by its own terms "represent[s] the entire and complete agreement" between the parties. *See* Service Authorization, 4/19/10, at 2. The express terms of the Service Authorization indicate that it was the intent of the parties to only integrate the exhibits listed on page four and attached thereto, which plainly exclude the 2008 GSA. Therefore, we hold that the parties are not bound by the arbitration clause of the 2008 GSA, and the trial court correctly overruled Columbia's preliminary objections and granted the O'Herron's motion for stay of arbitration.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/23/2021