J-A04021-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES DAVIS, ADMINISTRATOR OF THE ESTATE OF DORA RAMEY, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| 1245 CHURCH ROAD OPERATIONS, LLC D/B/A HILLCREST CENTER, GENESIS PA HOLDINGS LLC., AND ALBERT EINSTEIN MEDICAL CENTER | : | |
| | : | |
| APPEAL OF: 1245 CHURCH ROAD OPERATIONS, LLC D/B/A HILLCREST CENTER AND GENESIS PA HOLDINGS LLC. | : | No. 3539 EDA 2018 |

Appeal from the Order Entered November 20, 2018
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No.: 1712 01820

BEFORE:    PANELLA, P.J., STRASSBURGER, J.* and COLINS, J.*

MEMORANDUM BY STRASSBURGER, J.:                    Filed: April 16, 2020

1245 Church Road Operations, LLC, d/b/a Hillcrest Center (Hillcrest) and Genesis PA Holdings LLC (Genesis) (collectively, Appellants) appeal from the November 20, 2018 order overruling Appellants' preliminary objections in the nature of a petition to transfer the matter to mandatory arbitration. We vacate the order and remand.

The instant case stems from an action filed by Dora Ramey (Ramey) against Appellants and Albert Einstein Medical Center (AEMC)[1] involving

---

[1] AEMC is not a party to the instant appeal and did not file a brief.

*Retired Senior Judge assigned to the Superior Court.

claims of negligence and corporate negligence arising from injuries she sustained between December 2016 and June 2017, while in the care of Hillcrest and AEMC.

Prior to her admittance at Hillcrest or AEMC, Ramey lived with her son, Charles Davis (Davis), and attended an adult daycare center.[2]  While at the daycare center in the spring of 2015, Ramey developed pressure sores. Ramey was admitted to AEMC for diagnosis and treatment of the sores. Following discharge, AEMC advised Davis that Ramey could not return to his home and instead must be admitted to a nursing care facility.  AEMC provided Davis with a list of nursing facilities near his home, and Davis chose Hillcrest.

Upon visiting Hillcrest to begin the admissions process, Davis was presented with admission paperwork,[3] which included a document entitled "Voluntary Binding Arbitration Agreement" (Arbitration Agreement).  The Arbitration Agreement requires the parties to submit to arbitration all disputes arising out of Ramey's stay at Hillcrest.  Immediately below the title, in bold typeface and underlined, the document states: "**If this Agreement is not signed, the Patient will still be allowed to be cared for in this Center.**"  Praecipe to Attach Exhibits to Preliminary Objections,

---

[2] Ramey passed away on August 2, 2018.  On November 29, 2018, Davis filed a praecipe to substitute Davis as administrator of Ramey's estate.

[3] Genesis drafted the admissions paperwork.

4/2/2018, Exhibit B (Arbitration Agreement at 1). Paragraph 3 is entitled "Voluntary Agreement" and again states that "[s]igning this Agreement is voluntary and not a condition of the Patient's admission into this Center. The Patient's ability to be cared for in this Center will not be affected in any way if this Agreement is not signed." *Id.* Immediately following paragraph 3 is paragraph 4, which states that selection of Hillcrest as the patient's care facility is voluntary, and advises there are other care facilities available nearby. *Id.* Finally, above the signature line, in bold typeface and capitalized letters, the document states: "**THIS AGREEMENT IS VOLUNTARY AND IS NOT A PRECONDITION TO RECEIVING SERVICES AT** [Hillcrest]." *Id.* at 4. It also states in three locations that signing this agreement will result in the waiver of a right to trial by judge or jury, clarifying that waiver means "giving up" in paragraph 5. *Id.* at 1, 4.

Prior to Davis's signing of the Arbitration Agreement, Ramey granted Davis certain powers pursuant to a written general durable power of attorney, dated August 27, 1996. Davis presented this power of attorney during his meeting at Hillcrest. Davis was permitted to take the documents with him and fax them back once signed. Davis signed, as Ramey's power of attorney,[4] the Arbitration Agreement, along with the other admission

_____

[4] There is no dispute regarding Davis's authority to sign the Arbitration Agreement on behalf of Ramey.

paperwork, and faxed the completed documents to Hillcrest.[5] Ramey was admitted to Hillcrest on April 7, 2015.

On December 24, 2016, a Stage II pressure wound was discovered on Ramey's sacrum. She was transferred from Hillcrest to AEMC for treatment. She subsequently returned to Hillcrest, where she remained until she was transferred to Wesley Enhanced Living on June 22, 2017.

On December 14, 2017, Ramey filed a praecipe for writs of summons against Appellants and AEMC. The writs of summons were issued and served. On January 12, 2018, Ramey filed a complaint against Appellants and AEMC, as indicated hereinabove.

On March 29, 2018, Appellants filed preliminary objections, seeking to transfer the matter to arbitration based upon the Arbitration Agreement. Ramey filed an answer on April 18, 2018, arguing that the preliminary objections should be overruled because the Arbitration Agreement was unenforceable as a contract of adhesion. *See* Memorandum in Support of Answer to Preliminary Objections, 4/18/2018, at 3-6.

In support of their objections, Appellants submitted an affidavit from Gemma Frankhouser, Senior Admissions Director at Hillcrest, and a

---

[5] The admissions paperwork, including the Arbitration Agreement, is signed but not dated. The only document with a date is the "Representative Designation" document, dated April 13, 2015, next to Davis's signature. Thus, it appears from the record that Davis faxed the paperwork back no earlier than April 13, 2015.

videotaped deposition of Davis. In her affidavit, Frankhouser stated that she remembered Davis, but did not have a specific recollection of her admissions conversation with him. Based on her review of Ramey's file, she determined that she discussed various forms with Davis, including the Arbitration Agreement, and that both Davis and she signed these forms. Though her specific recollection was lacking, she stated that her normal practice regarding the Arbitration Agreement included (1) ensuring that the individual signing had the authority to do so; (2) explaining the terms of the Arbitration Agreement, including that it was not required for admission to Hillcrest; (3) informing the signatory that he could review the Arbitration Agreement with an attorney; and (4) answering any other questions a signatory may have. Affidavit of Gemma Frankhouser, 5/21/2018, at 1-2.

In his deposition, Davis stated that he hired an attorney to help him with the admissions process of placing his mother in a nursing home. Deposition of Davis, 7/20/2018, at 17. According to Davis, his first interactions with Hillcrest, via his attorney, were "terrible." *Id.* at 14. When Davis visited Hillcrest, though, his mother was approved for admission that day. *Id.* at 16-17. On that day, he believed he met with two women who presented him with various forms, including the Arbitration Agreement. *Id.* at 44-45. He did not remember if anyone explained the forms to him, nor did he recall filling out the forms. *Id.* at 19-20, 35-36, 39-41, 43, 48. According to Davis, he "was in a state of real confusion[,]" "mental

discombobulation[,]" and "such a fog" that he did not remember, and would not have cared, if anyone had explained the forms to him. *Id.* at 20, 46, 48. He stated that he would have signed anything to get his mother admitted to Hillcrest. *Id.* at 20-21, 44, 46, 48.

Upon reviewing the forms during his deposition, Davis recalled that he took the forms home, filled them out, signed them, and faxed them to Hillcrest upon completion. *Id.* at 19-20, 35-36, 39-41, 44-45. He stated that he did not read them before signing, and that he had no time to discuss the admission process with anyone. *Id.* at 21, 38, 47.

Davis also stated that he helped his mother with her financial affairs and took care of his own affairs, including running a business where he rents homes to tenants via standardized pre-written leases. *Id.* at 25-34, 49-51.

The trial court heard oral argument on September 6, 2018. On November 20, 2018, the trial court overruled the preliminary objections. Trial Court Order, 11/20/2018. This timely filed notice of appeal followed.[6]

Appellants raise four questions for our consideration on appeal.[7] In essence, all four questions raise a claim that the trial court erred in

---

[6] "An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42 Pa.C.S.[] § 7320(a) and Pa.R.A.P. 311(a)(8)." *Petersen v. Kindred Healthcare, Inc.*, 155 A.3d 641, 644 n.1 (Pa. Super. 2017).

Both Appellants and the trial court have complied with the mandates of Pa.R.A.P. 1925.

overruling Appellants' preliminary objections and refusing to enforce the Arbitration Agreement. Appellants' Brief at 4-5.

"[O]ur review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 49–50 (Pa. Super. 2017). "We employ a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement." *Washburn v. Northern Health Facilities, Inc.*, 121 A.3d 1008, 1012 (Pa. Super. 2015) (citation omitted).

"When addressing the issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." *Cardinal*, 155 A.3d at 53 (citation omitted). "The only exception to a state's obligation to

---

[7] While Appellants raised four questions in their statement of questions section of their brief, they divided their argument section into only two parts, in violation of Pa.R.A.P. 2119(a). However, because Appellants' questions can be consolidated into one claim that the trial court erred in overruling the preliminary objections and failing to enforce the Arbitration Agreement, and the argument section addresses that claim, we do not find waiver for failure to comply with the Rules of Appellate Procedure.

enforce an arbitration agreement is provided by the savings clause, which permits the application of generally applicable state contract law defenses such as fraud, duress, or unconscionability, to determine whether a valid contract exists." ***Taylor v. Extendicare Health Facilities, Inc.***, 147 A.3d 490, 509 (Pa. 2016). "Concerning the defense of unconscionability, we have explained that '[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties [(procedural unconscionability),] together with contract terms which are unreasonably favorable to the other party [(substantive unconscionability)].'" ***Kohlman v. Grane Healthcare Co.***, ____ A.3d ____, 2020 WL 611085, at *5 n.8 (Pa. Super. 2020) (quoting ***Cardinal***, 155 A.3d at 53 (citation omitted)).

In its Pa.R.A.P. 1925(a) opinion, the trial court explained that it overruled Appellants' objections because it found the Arbitration Agreement procedurally and substantively unconscionable, and therefore unenforceable, based on the manner in which the document was presented, the limitation on damages, and because the document was a standardized form "concerning a legal matter outside the ken of the ordinary consumer." Trial Court Opinion, 5/2/2019, at 7-11. Specifically, the trial court considered the evidence presented as follows.

> Davis'[s] description of his thought processes when signing the documents demonstrates that his bargaining power suffered from lack of experience and sophistication relative to that of the drafter, [] Genesis []; Davis signed numerous documents he did

- 8 -

not understand because he believed they were the key to obtaining care for his mother. [AEMC] had discharged his mother with the express instruction that she not go home and that Davis admit her immediately to a nursing home. Accordingly, his need to find a placement was urgent. He chose Hillcrest from a list provided by [AEMC] because it was closest to his home. The [trial c]ourt credit[ed] his testimony that he believed that if he did not sign all the documents, his mother would not receive care.

Davis'[s] account of his interaction with Hillcrest is largely uncontradicted. Frankhouser does not recall meeting with or instructing Davis about the [Arbitration] Agreement, but asserts that upon reviewing her records, she "determined" that she must have done so, in accordance with her customary practice. This conclusory assertion is unaccompanied by any corroborative evidence of documents typically generated in a transaction that is undeniably important to both parties, such as contemporaneous notes, memoranda, correspondence, email, computer data or calendar entries[.] She fails to even attach or identify copies of any material in Ramey's file that is the basis of her "determination." For this reason, [the trial c]ourt [was] unpersuaded that Frankhouser's account of her encounter with Davis is accurate. Instead, the [trial c]ourt credits Davis'[s] recollection, which is direct, specific and emotional. The [trial c]ourt finds that the [Arbitration] Agreement is procedurally unconscionable because it was presented to Davis in a woefully deficient manner.

\*\*\*

[The limitation on damages outlined in paragraph 11 of the Arbitration Agreement] indisputably favors Hillcrest[.] … Nothing in the boldface notices in the [Arbitration] Agreement about the signatory's waiver of a right to a trial by judge or jury alerts the reader to the additional substantive and important limitation in paragraph 11 on a signatory's rights to a full remedy. The [trial] court finds this [] dispositive and finds that the [Arbitration] Agreement is substantively unconscionable.

Trial Court Opinion, 5/2/2019, at 8-10.

Appellants argue that the trial court erred in finding the Arbitration Agreement unenforceable. According to Appellants, the evidence established that "the steps taken by [Hillcrest] to obtain [] Davis's signature were fair and offered him a definitive choice." Appellants' Brief at 32-33. Appellants further argue that Davis's choice to sign the Arbitration Agreement without reading it does not mean that he was not offered the opportunity to do so, and his taking the documents home and then faxing them, completed and signed, to Hillcrest, negates any claim that Hillcrest pressured him into signing the Arbitration Agreement. *Id.* at 33.

We first review the trial court's finding of procedural unconscionability. In finding procedural unconscionability, the trial court credited Davis's statements that he believed his mother would not be admitted without signing the documents and that he was in a fog as he proceeded through the admissions process. Despite Davis's erroneous assumption, the record reveals that the Arbitration Agreement states three times, twice in distinct typeface, that the agreement to arbitrate is voluntary and that receiving care at Hillcrest is not contingent upon signing. It was revocable within 30 days of signing, and states that the signatory has a right to have the agreement reviewed by an attorney. Notably, Davis hired an attorney to help him with the paperwork for admitting his mother to Hillcrest, and employed that attorney to speak with Hillcrest about admission prior to his visiting. While it could be presumed that Davis had some familiarity with

- 10 -

contract terminology pursuant to his rental business, he also was an individual who was comfortable seeking legal advice when he deemed it necessary. As explained by Davis, he "manage[s] things to a point that where [if he] need[s] some legal advice, [he] go[es] to a lawyer or someone that has more knowledge than [he.]" Deposition, 7/20/2018, at 17-18.

In the instant case, Davis took the admissions paperwork home with him, completed it, and faxed it back six days after Ramey was admitted to Hillcrest. Thus, he had the opportunity to have his attorney review the documents if he so chose. Notably, in filling out the admissions paperwork, Davis did not rubber-stamp each document. When given the option to check yes or no, he answered no to specific items, declining to give permission to Hillcrest to open Ramey's personal mail, do her personal laundry, or handle her personal funds. *See* Admission Agreement; Resident Fund Accounts. Thus, it is apparent from the record that he reviewed at least the Admission Agreement and the Resident Fund Accounts document. Accordingly, we conclude that his assertion that he did not have time to discuss the admission paperwork with anyone, or review it himself, is refuted by the record and not supported by substantial evidence.

Furthermore, our review of the record indicates that this is not a case of non-disclosure on the part of Appellants, but rather a case where Davis did not put forth any effort to read or understand the Arbitration Agreement. Davis's failure to notice the Arbitration Agreement's clear statements that it

did not need to be signed for Ramey to receive care, was due to his choice to sign it without reading it. His willful failure to read the Arbitration Agreement does not render it procedurally unconscionable.

> "The law of Pennsylvania is clear. One who is about to sign a contract has a duty to read that contract first." As this Court has stated:
>
>> It is well established that, in the absence of fraud, the failure to read a contract before signing it is "an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract"; it is considered "supine negligence."

*Hinkal v. Pardoe*, 133 A.3d 738, 743 (Pa. Super. 2016) (citations omitted).

Accordingly, we conclude that the trial court's finding that Davis did not have a meaningful choice in entering into the Arbitration Agreement was not supported by substantial evidence, and therefore the trial court abused its discretion in overruling the preliminary objections on the basis of procedural unconscionability. *Cardinal*, 155 A.3d at 49–50. *See also Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1260 (Pa. 2015) (Opinion Announcing the Judgment of the Court) ("[A] similarly situated non-drafting party could not use her failure to read as a means of disavowing an otherwise valid arbitration agreement.").

We next consider the trial court's finding of substantive unconscionability, mindful of the following.

> In *MacPherson* [*v. Magee Memorial Hosp. for Convalescence*, 128 A.3d 1209 (Pa. Super. 2015) (*en banc*),] this Court examined [an] arbitration agreement and concluded that it was neither procedurally nor substantively

unconscionable. In reaching that conclusion, we noted the following terms contained in the agreement: (1) the parties shall pay [] their own fees and costs, similar to civil litigation practice in common pleas court; (2) a conspicuous, large, bolded notification that the parties, by signing, are waiving the right to a trial before a judge or jury; (3) a notification at the top of the agreement, in bold typeface and underlined, that it is voluntary, and if the patient refuses to sign it, "the Patient will still be allowed to live in, and receive services" at the facility; (4) a provision that the facility will pay the arbitrators fees and costs; (5) **a statement that there are no caps or limits on damages other than those already imposed by state law**; and (6) a provision allowing the patient to rescind within thirty days.

***Cardinal***, 155 A.3d at 53 (emphasis added).

In the instant case, the Arbitration Agreement contains substantially similar terms as the ones outlined in ***MacPherson***, save for paragraph 11, which sets forth the following limitation on damages.

11. <u>Limitation on Damages.</u> The Arbitrator or Arbitration Panel is authorized to award compensatory and punitive damages to the extent permitted by the substantive state law for the state in which [Hillcrest] is located. However, any award (including compensatory and punitive damages, fees and other costs), regardless of the nature of the dispute, shall not exceed the *lesser of*: (a) 3 times the amount of the prevailing party's compensatory damages or (b) any applicable caps on damages under the state law where [Hillcrest] exists. All disputes regarding availability of compensatory and punitive damages under applicable state law shall be decided by the Arbitrator or Arbitration Panel. **If any terms of this Section titled "Limitation on Damages" is determined to be invalid or unenforceable for any reason, then the parties' intent is that only such terms be severed, and this Agreement's remaining terms shall be enforced.**

Arbitration Agreement at 2 (emphasis added). The trial court found that this limitation on damages clause made the Arbitration Agreement substantively

- 13 -

unconscionable. Trial Court Opinion, 5/2/2019, at 10. What the trial court ignored, though, is that Genesis included a severability clause at the end of paragraph 11, as well as a general severability clause in paragraph 17. Arbitration Agreement at 2-3.

Where the "arbitration provision is separate and distinct from the damage limitation portion of the agreement, both location-wise and functionally[, such that] the damage limitation may be stricken from the agreement without affecting the parties' agreement to arbitrate[,]" and the agreement "contains an explicit severability clause[,]" this Court has held that a limitation on damages clause may be severed, allowing the rest of the agreement to remain enforceable. *Fellerman v. PECO Energy Co.*, 159 A.3d 22, 29 (Pa. Super. 2017). In the instant case, the limitation on damages clause is separate and distinct from the provisions governing arbitration, and the portion of paragraph 11 limiting damages "may be stricken from the agreement without affecting the parties' agreement to arbitrate." *Id.* Additionally, Genesis included explicit severability clauses within paragraphs 11 and 17. Accordingly, the trial court erred in not severing this portion of the agreement and permitting the remainder of the agreement to remain enforceable. *Id.*

Based on the foregoing, we conclude that the trial court's finding of unconscionability, rendering the otherwise valid Arbitration Agreement unenforceable, was not supported by substantial evidence.

*See Cardinal*, 155 A.3d at 54 (finding that where the agreement made clear that the parties were giving up their right to trial the agreement was not unconscionable). Accordingly, we vacate the order overruling Appellants' preliminary objections and remand to the trial court.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Colins joins in this memorandum.

President Judge Panella files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/20